Steven A. Berger (SB 2038)
Thomas E. Hone (TH 7420)
BERGER & WEBB, LLP
7 Times Square, 27th Floor
New York, NY 10036
(212) 319-1900

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT A. STROMSTED,

                        *Plaintiff,*

   - against -

HNTB CORPORATION,

                        *Defendant.*

11 Civ. 2023 (AKH)

ECF CASE

---

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

78153

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES..................................................................................................... ii

INTRODUCTION.....................................................................................................................1

FACTUAL BACKGROUND....................................................................................................1

      2000-2005 VP Employment Agreement ........................................................................2

      2005-2009 SVP Employment Agreement......................................................................2

      In 2009 Mr. Stromsted Was Promoted To CEO of HNTB
      And Elected To The Board Of HNTB's Parent................................................................3

      Events Leading Up To HNTB's Terminating
      Mr. Stromsted's Employment Without Cause................................................................4

      HNTB Seeks To Prevent Mr. Stromsted From Competing For Two Years....................5

ARGUMENT

MR. STROMSTED'S MOTION
SHOULD BE GRANTED......................................................................................................... 6

      Mr. Stromsted Meets The Legal Standard
      For The Issuance Of A Preliminary Injunction ............................................................. 6

      Likelihood Of Success On The Merits........................................................................... 7

      There Are Sufficiently Serious Questions Going To The Merits And
      A Balance Of Hardships Tipping Decidedly In Mr. Stromsted's Favor....................... 8

      Irreparable Harm........................................................................................................... 10

      HNTB's Motion To Dismiss......................................................................................... 11

CONCLUSION.........................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGES**

*American Airlines, Inc. v. Imhof and Delta Airlines,* 620 F. Supp. 2d 574 (S.D.N.Y. 2009)...... 6-8

*Arakelian v. Omnicare, Inc.*, 09 Civ. 8070 (S.D.N.Y. August 18, 2010) .............................. 10

*Baxter Int'l Inc. v. Morris*, 976 F.2d 1189 (8th Cir. 1992)................................................ 9

*BDO Seidman v. Hirschberg*, 93 N.Y.2d 382 (1999)....................................................... 9

*Buffalo Forge Co. v. AMPCO-Pittsburgh Corp.*, 638 F.2d 568 (2d Cir. 1981)..................... 10

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496 (1977) ..................... 10

*Eastman Kodak Co. v. Carmosino*, 909 N.Y.S.2d 247 (4th Dep't 2010)............................. 11

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168 (2d Cir. 2004)...... 8

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)..................... 6

*Graff v. Billet*, 64 N.Y.2d 899 (1984) ........................................................................ 8

*Holford USA Ltd. v. Cherokee, Inc.*, 864 F. Supp. 364 (S.D.N.Y. 1994)............................. 9

*IBM Corp. v. Visentin*, 11 Civ. 399 (LAP),
2011 U.S. Dist. LEXIS 15342 (S.D.N.Y., Feb. 16, 2011)............................................. 9, 11

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990)................................. 10

*Kamerling v. Massanari*, 295 F.3d 206 (2d Cir. 2002) .................................................. 10

*Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002)...................................................... 10

*Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525 (2d Cir. 2006)............................... 10

*Nissellson v. DeWitt Stern Group, Inc. (In re UFG Int'l, Inc.)*, 225 B.R. 51 (S.D.N.Y. 1998) ...... 10

*Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 83 (1979)......................... 10

*Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, *rearg. denied* 40 N.Y.2d 918 (1976)........... 11

*SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*, 867 F. Supp. 155 (S.D.N.Y. 1994).......... 10

*US Naval Inst. v. Charter Communications, Inc.*, 875 F.2d 1044 (2d Cir. 1989)..................... 8

**TREATISE**

Restatement (Second) Of Contracts § 206 (1981)........................................................... 8

## INTRODUCTION

Plaintiff Robert A. Stromsted respectfully submits this memorandum of law in support of his application for an order enjoining defendant HNTB Corporation ("HNTB") during the pendency of this action from attempting to enforce a lapsed Senior Vice President Employment Agreement ("SVP Employment Agreement") that from 2005 to 2009 imposed on Mr. Stromsted, specifically as an SVP, certain post-employment restrictions including working for competitors of HNTB.

The SVP Agreement expired in February 2009 when HNTB promoted Mr. Stromsted to the CEO position and failed to have him execute any employment agreement as the CEO.

This injunctive relief is necessary because, on January 14, 2011, HNTB terminated Mr. Stromsted's employment, without cause, and took the position that Mr. Stromsted is barred for two years from working for any competitor of HNTB based on his execution of the expired SVP Agreement.

## FACTUAL BACKGROUND

In 2000, when Mr. Stromsted was residing and working in California, HNTB recruited him away from one of its largest competitors, Parsons Transportation Group, and he brought a significant number of client relationships to HNTB, through which HNTB has benefited in the amount of approximately $300 million in revenue. *(Affidavit of Robert A. Stromsted, sworn to March 31, 2011, "Stromsted Aff.," at ¶ 5.)* Parsons Transportation Group imposed no restrictive covenants on him, which apparently is the standard practice in the industry. *(Id.)*

HNTB is an infrastructure firm that provides planning, design, program management and construction management services to federal, state, municipal, military and

1

private clients throughout the United States and abroad. HNTB does business in New York, where it maintains an office, and had revenue of approximately $900 million in 2010. *(Stromsted Aff., at ¶ 6.)*

**2000-2005 VP Employment Agreement**

At the time Mr. Stromsted joined HNTB, he was presented with a Vice President Employment Agreement prepared by HNTB ("VP Agreement") *(Exh. A to Complaint, which is annexed to the Stromsted Aff. as Exh. 1)*. Mr. Stromsted sought to negotiate its terms and was told that he had to sign the VP Agreement as is. *(Stromsted Aff., at ¶ 7.)* The VP Agreement specifically states in Section 1 that the "Corporation hereby employs the Officer ***as a Vice President*** and the Officer hereby ***accepts such employment*** with the Corporation upon the terms and conditions herein set forth." (Emphasis added.). *(Stromsted Aff., at ¶ 8.)* Mr. Stromsted worked as a Vice President for five years. *(Stromsted Aff., at ¶ 9.)*

**2005-2009 SVP Employment Agreement**

In 2005, Mr. Stromsted was promoted to Senior Vice President, and he was presented with a Senior Vice President Employment Agreement prepared by HNTB ("SVP Agreement"; *Exh. B to Complaint*). Mr. Stromsted was required to sign it as presented. *(Stromsted Aff., at ¶ 10.)* The SVP Agreement specifically states in Section 1:

> The Corporation hereby employs the Officer ***as a Senior Vice President*** and the Officer hereby ***accepts such employment*** with the Corporation upon the terms and conditions herein set forth. The Officer shall have such duties as assigned from time to time by the Corporation's Board of Directors (the "Board") and ***any officers of the Corporation senior to the Officer***. (Emphasis added.)

The SVP Agreement was designed to apply to Mr. Stromsted during the time he was an SVP. *(Stromsted Aff., at ¶ 12.)*

Paragraph 6 of the SVP Agreement sets forth certain restrictive covenants.

2

Paragraph 6(a)(ii) (Non-Solicitation of Clients) of the SVP Agreement basically provides that Mr. Stromsted cannot solicit or take away any current or prospective HNTB client with whom he dealt as an employee, for whom HNTB incurred any costs within the past two years, or from whom HNTB received any fees within the past two years.

Paragraph 6(a)(iii) of the SVP Agreement provides:

> (iii) <u>Covenant Not To Compete</u>. The Officer shall not directly or indirectly enter into or in any manner take part in any business, profession, or other endeavor that competes with the Corporation or any affiliate in the business of providing architecture, engineering, planning, design-build, or related professional services in those states where any projects for a client of the Corporation or any affiliate (or any prospective client to whom the Corporation or any affiliate has given an active proposal) is or will be located, which project was proposed or worked on by the Corporation or any affiliate during the Officer's employment with the Corporation.

In 2006, Mr. Stromsted began working out of HNTB's Manhattan office and, in 2007, he relocated his family to the New York metropolitan area. *(Stromsted Aff., at ¶ 16.)*

**In 2009 Mr. Stromsted Was Promoted To CEO of HNTB And Elected To The Board Of HNTB's Parent**

In February 2009, Mr. Stromsted was promoted to CEO of HNTB. A copy of his business card is annexed as *Exhibit C* to the Complaint, and a copy of HNTB's Leadership page from HNTB's website is annexed as *Exhibit D* to the Complaint. Both documents identify Mr. Stromsted as the CEO of HNTB, not an SVP. *(Stromsted Aff., at ¶ 17.)*

After February 2009, Mr. Stromsted referred to himself as the CEO, and others inside and outside of HNTB referred to him only as the CEO, not an SVP. *(Stromsted Aff., at ¶ 18.)* Significantly, when Mr. Stromsted was promoted to CEO, he was not presented with, nor did he sign, any employment agreement in connection with his new position of CEO. *(Stromsted Aff., at ¶ 19.)*

As the CEO, there were no officers of HNTB who were senior to Mr. Stromsted.

3

*(Stromsted Aff., at ¶ 20.)* Shortly after he became the CEO, he became a member of the Board of Directors of HNTB's parent, HNTB Holdings Ltd. *(Stromsted Aff., at ¶ 21.)*

**Events Leading Up To HNTB's
Terminating Mr. Stromsted *Without Cause***

In December 2010, Mr. Stromsted had discussions with Ken Graham (CEO of HNTB Infrastructure) and Harvey Hammond Jr. (Executive Chairman of HNTB Holdings Ltd.) about the possibility of his no longer being the CEO of HNTB and a member of the Board of its parent, and his potentially assuming a different position within the HNTB organization. *(Stromsted Aff., at ¶ 22.)* Mr. Stromsted was shocked because, among other things, during his tenure as the CEO the revenues and profits of HNTB rose year-over-year. *(Stromsted Aff., at ¶ 23.)* Those discussions evolved in January 2011 into his possibly transitioning out of the HNTB organization. *(Stromsted Aff., at ¶ 24.)*

During the week of January 10, 2011, the discussions continued with Mr. Stromsted and his counsel and HNTB and its outside counsel. Both Mr. Stromsted and his counsel made it clear to HNTB and its counsel that the SVP Agreement expired in February 2009 when Mr. Stromsted became the CEO. *(Stromsted Aff., at ¶ 25.)*

On Friday, January 14, 2011, Mr. Stromsted had further discussions with HNTB's Human Resources representative, John Prutsman, in Mr. Stromsted's office in New York. Without revealing the substance of the conversation regarding the terms of his possible separation from HNTB, Mr. Stromsted stated in his affidavit that after a short break in the discussions, Mr. Prutsman returned to his office with Paul Yarossi, President of HNTB Holdings Ltd. Mr. Stromsted was then abruptly told that HNTB had decided to end the discussions and terminate his employment effective immediately. Mr. Stromsted was dumbfounded, but managed to ask whether he was being terminated without cause. Mr. Yarossi responded

immediately, stating "Of course, Bob, your termination is without cause." *(Stromsted Aff., at ¶ 26.)*

HNTB was not even interested in a transition where Mr. Stromsted would continue to help HNTB win work, and instead it told him to focus on finding another job. *(Stromsted Aff., at ¶ 27.)*

**HNTB Seeks To Prevent Mr. Stromsted
From Competing For Two Years**

In connection with HNTB's termination of his employment, Mr. Stromsted received a letter, dated January 14, 2011 (*Exh. E to Complaint*), by which HNTB sought to enforce the SVP Agreement against Mr. Stromsted, stating in part "You also agreed that, for two years, you would not be part of any business which competes with HNTB." *(Stromsted Aff., at ¶ 28.)*

At the close of business that same day, Mr. Graham issued an internal memorandum to all HNTB employees regarding Mr. Stromsted departure stating in part "I wanted to make you aware that senior vice president Bob Stromsted has left HNTB." (*Exh. 2 hereto*). The reference to me as a "senior vice president" was a transparent attempt by HNTB to stake out a legal position that the SVP Agreement and its restrictive covenants somehow were resurrected on January 14, 2011. This reference to Mr. Stromsted as "senior vice president" is, as previously noted, contrary to his business cards, HNTB's own website, and how everyone referred to Mr. Stromsted, *i.e.*, as HNTB's CEO. *(Stromsted Aff., at ¶ 29.)*

In fact, Mr. Stromsted was listed on HNTB's website as the CEO until after the close of business on January 14, 2011. *(Stromsted Aff., at ¶ 30.)*

Mr. Stromsted is not aware of any internal or external statement that announced that he was no longer HNTB's CEO or a member of its parent's board of directors. *(Stromsted*

5

*Aff., at ¶ 31.)* And he has never seen, been advised, or otherwise become aware that any corporate action was ever taken to remove him as HNTB's CEO. *(Stromsted Aff., at ¶ 32.)*

After Mr. Stromsted's termination, certain settlement discussions took place in an effort to avoid litigation, which proved unsuccessful. In addition, despite Mr. Stromsted's vigorous and diligent efforts to obtain employment in the infrastructure consulting engineering industry, he has been unable to find suitable employment. *(Stromsted Aff., at ¶ 33.)*

Rather, Mr. Stromsted has been informed by a number of potential employers in the industry that they want to hire him, but they are prevented from doing so because HNTB is seeking to bar him from working for any of its competitors and, therefore, they would expose themselves to potential litigation with HNTB. *(Stromsted Aff., at ¶ 34.)* HNTB's position, therefore, prevents Mr. Stromsted from earning a living in his chosen profession. *(Stromsted Aff., at ¶ 35.)*

## ARGUMENT

## MR. STROMSTED'S MOTION SHOULD BE GRANTED

**Mr. Stromsted Meets The Legal Standard For The Issuance Of A Preliminary Injunction**

It is very clear from the accompanying Stromsted Affidavit, Complaint with exhibits annexed thereto, and the reasons set forth herein, that Mr. Stromsted has met the standard for the issuance of a preliminary injunction.

A party seeking a preliminary injunction must demonstrate (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009); *American Airlines, Inc.*

6

*v. Charles F. Imhof and Delta Airlines, Inc.,* 620 F. Supp. 2d 574 (S.D.N.Y. 2009). Mr. Stromsted has satisfied all prongs of the standard for the issuance of a preliminary injunction.

**Likelihood Of Success On The Merits**

Mr. Stromsted possesses a likelihood of success on the merits because the underlying facts plainly support his position that the SVP Agreement no longer applies to him.

HNTB provided Mr. Stromsted with a job-specific employment agreement when he joined as a Vice President in 2000, and another when he became a Senior Vice President in 2005, but it failed to do so when he became the CEO in 2009.

Consequently, no employment agreement applied to Mr. Stromsted after he became the CEO in February 2009, and no terms of the SVP Agreement apply to him now.

As a basic tenet of contract law, Mr. Stromsted was bound to the SVP Agreement only when he was an SVP, and not after he became the CEO. The words of the SVP Agreement are specific.

> The Corporation hereby employs the Officer *as a Senior Vice President* and the Officer hereby *accepts such employment* with the Corporation upon the terms and conditions herein set forth. The Officer shall have such duties as assigned from time to time by the Corporation's Board of Directors (the "Board") and *any officers of the Corporation senior to the Officer*. (*Exh. B to Complaint, at Section 1;* emphasis added.)

The SVP Agreement, which HNTB drafted in its entirety, does not say that it shall apply to Mr. Stromsted as an SVP and also such higher positions to which might be promoted. It applied to him when he was an SVP, and only when he was an SVP.

Moreover, that the SVP Agreement was intended to apply to Mr. Stromsted only when he was an SVP is further supported by the inclusion of the language that duties would be assigned to him by any officers of HNTB senior to him, and obviously there were no officers of HNTB who were senior to Mr. Stromsted when he became the CEO.

7

Where, as here, the terms of an agreement are clear and unambiguous, its plain meaning should be enforced without regard to consideration of extrinsic evidence of the parties' understanding or intent. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177-78 (2d Cir. 2004). This is particularly important when significant restrictive covenants are sought to be imposed on an individual and his livelihood impaired.

And, to the extent there is any ambiguity in the SVP Agreement, it must be construed against HNTB as the sole drafter of the agreement. *See US Naval Inst. v. Charter Communications, Inc.*, 875 F.2d 1044, 1050-51 (2d Cir. 1989) (interpreting ambiguous copyright grant against party preparing agreement); *Graff v. Billet*, 64 N.Y.2d 899 (1984); Restatement (Second) Of Contracts § 206 (1981).

In a recent case where American Airlines was attempting to impose non-compete obligations on a former employee hired by Delta Airlines, Judge Kaplan found there were no non-compete obligations and stated the following:

> If American were as deeply concerned about the risk of Mr. Imhof going to work for a competitor as it now professes, it had means to prevent it. It could have offered Mr. Imhof an employment contract containing a reasonable covenant against post-employment competition. Had it done so, and had Mr. Imhof accepted, American would not be in the position of which it now complains.

*American Airlines, supra,* 620 F. Supp. 2d at 587.

Likewise, if HNTB wanted to impose non-compete obligations on Mr. Stromsted when he became the CEO in 2009, it should have had him execute an employment agreement that applied to him as the CEO and included such obligations. HNTB did not do that.

**There Are Sufficiently Serious Questions Going To The Merits And
A Balance Of Hardships Tipping Decidedly In Mr. Stromsted's Favor**

Alternatively, if the Court determines that Mr. Stromsted has not demonstrated a likelihood of success on the merits, then certainly there are (i) sufficiently serious questions

8

going to the merits to make them a fair ground for litigation, and (ii) a balance of hardships tipping decidedly in Mr. Stromsted's favor.

In light of the facts set forth in the Complaint, and the Stromsted Affidavit, there can be no question that there are serious questions regarding the SVP Agreement's applicability to Mr. Stromsted after February 2009, and whether its two-year restrictive covenants apply after February 2011.

The balance of equities lie decidedly in Mr. Stromsted's favor because the harm to Mr. Stromsted if the injunction were not granted is significantly greater than the harm to HNTB if it were granted. *See Holford USA Ltd. v. Cherokee, Inc.*, 864 F. Supp. 364, 374 (S.D.N.Y. 1994).

If Mr. Stromsted were barred from earning a living in his profession for two years it would have an immediate and long lasting impact on him and his family. Mr. Stromsted would be forced to obtain a lower paying, less desirable job, while the marketplace of his expertise continues to advance without him. *See Baxter Int'l Inc. v. Morris*, 976 F.2d 1189, 1194 (8th Cir. 1992) (affirming non-enforcement of noncompetition agreement because "a protracted absence could alienate [the employee's] new employer"); *IBM Corp. v. Visentin*, 11 Civ. 399 at p. 59 (LAP), 2011 U.S. Dist. LEXIS 15342 (S.D.N.Y., Feb. 16, 2011).

If Mr. Stromsted were permitted to earn a living in his profession, there is no reason to believe that HNTB would suffer any meaningful harm at all.

It would be grossly unreasonable for HNTB to restrict Mr. Stromsted's future employment as HNTB has stated it will.[1] And, because HNTB decided it no longer needed Mr.

---

[1] Non-compete clauses in employment agreements are disfavored and will be enforced only to the extent reasonable and necessary to protect legitimate business interests, provided they are not unduly burdensome to the employee and not injurious to the public interest. *See IBM Corp. v. Visentin*, 11 Civ. 399 at pp. 51-61 (LAP), 2011 U.S. Dist. LEXIS 15342 (S.D.N.Y., Feb. 16, 2011); *BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 388-89 (1999).

Stromsted's services and terminated his employment—without cause—the restrictive covenants are unenforceable as a matter of law.[2]

**Irreparable Harm**

Mr. Stromsted will suffer irreparable harm absent the injunction because, in light of HNTB's position, for the next two years Mr. Stromsted will be unable to earn a living in his chosen profession of 35 years.

The injury to Mr. Stromsted is actual and imminent, not remote or speculative, as HNTB has stated that it seeks to prevent him from competing for two years, and potential employers have said they want to hire Mr. Stromsted but cannot do so because of HNTB's position. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (the threatened irreparable harm "must be ... actual and imminent, not remote or speculative."); *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (a possibility of irreparable injury is not enough; a likelihood is required); *Buffalo Forge Co. v. AMPCO-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981) (the threat of irreparable injury is a *sine qua non*).

Moreover, an employee's loss of livelihood is strongly disfavored by the law. *See Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496 (1977) ("Restrictive

---

[2] Courts "will not enforce a non-competition provision in an employment agreement where the former employee was involuntarily terminated." *SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*, 867 F. Supp. 155, 158 (S.D.N.Y. 1994); *see Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84 (1979). "An essential aspect [of enforceable restraints on employee mobility] is the employer's continued willingness to employ the party covenanting not to compete." *SIFCO*, 876 F. Supp. at 158 (quoting *Post*, 397 N.E.2d at 360). Enforcing a noncompetition provision when the employee has been discharged without cause "would be 'unconscionable' because it would destroy the mutuality of obligation on which a covenant not to compete is based." *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529-30 (2d Cir. 2006) (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 254-55 (2d Cir. 2002)). This rationale applies with equal force to covenants not to solicit a former employer's clients and employees; solicitation is simply a form of competition. *See Nissellson v. DeWitt Stern Group, Inc. (In re UFG Int'l, Inc.)*, 225 B.R. 51, 55-56 (S.D.N.Y. 1998) (Cedarbaum, J.); *Arakelian v. Omnicare, Inc.*, 09 Civ. 8070 (S.D.N.Y. August 18, 2010) (Crotty, J.) (declaring non-compete and non-solicitation provisions in employment agreement unenforceable as a matter of law against employee terminated without cause).

covenants which tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored by the law."); *Eastman Kodak Co. v. Carmosino*, 909 N.Y.S.2d 247 (4th Dep't 2010) (restrictive covenant not enforced; non-compete agreements are judicially disfavored because powerful considerations of public policy militate against sanctioning the loss of a person's livelihood) citing *Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 307, *reargument denied* 40 N.Y.2d 918 (1976).

Forcing Mr. Stromsted to remove himself from his profession for two years would not only be tremendously burdensome and inequitable to Mr. Stromsted and his family from a financial point of view, but it also would harm his future career prospects in a dynamic industry. *See Baxter Int'l Inc., supra,* 976 F.2d at 1194 (8th Cir. 1992) (affirming non-enforcement of noncompetition agreement because "a protracted absence could alienate [the employee's] new employer"); *IBM Corp., supra,* 11 Civ. 399 at p. 59 (LAP), 2011 U.S. Dist. LEXIS 15342 (S.D.N.Y., Feb. 16, 2011).

**HNTB's Motion To Dismiss**

HNTB has filed a motion to dismiss this case relying on the SVP Agreement's forum selection clause (§ 11) and survival clause (§ 18). To the extent HNTB advances those arguments in opposition to this motion, they should be rejected.

HNTB's forum selection clause argument fails because it assumes that the SVP Agreement is still in effect. As demonstrated above, it is clear that the SVP Agreement only governed Mr. Stromsted while he was an SVP. The SVP Agreement expired in February 2009, when Mr. Stromsted became the CEO. As a result, the forum selection clause expired in February 2009, as did the restrictive covenant clauses.

HNTB's savings clause argument fails because Mr. Stromsted's employment under the SVP Agreement ended in February 2009 and, therefore, any enforceable two year non-

compete obligation began to run at that time and expired in February 2011. Moreover, to the extent the savings clause applies, it only applies to post-employment rights and obligations, which includes the restrictive covenants, not the forum selection clause. To the extent this Court determines there is a post-employment non-compete that survives notwithstanding the expiration of the SVP Agreement, then the restrictive covenants are unenforceable as a matter of law because Mr. Stromsted was terminated without cause. See footnote 2, *supra*.

## CONCLUSION

For the foregoing reasons, Mr. Stromsted respectfully requests that his motion be granted.

Dated:   New York, NY
         March 31, 2011

**BERGER & WEBB, LLP**

By: _____
    Steven A. Berger
    Thomas E. Hone

*Attorneys for Plaintiff*
7 Times Square, 27th Floor
New York, NY 10036
(212) 319-1900